Larry LAYMAN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 2–280A61.

Court of Appeals of Indiana,
First District.

July 14, 1980.
Rehearing Denied Aug. 14, 1980.

Donald A. Scheer, Cassidy & Scheer, Marion, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Larry Layman appeals from his conviction by a jury of two counts of Theft and

one count of Possession of Marijuana, over thirty grams, for which he was sentenced to a determinate term of two years imprisonment on each count, the sentences to be served consecutively.

## FACTS

On January 26, 1979, a search warrant was issued by Grant Superior Court II upon the affidavit of Sergeant Kreider of the Indiana State Police for the seizure of "controlled substances" at 208 and 212 East 38th Street in Marion, Grant County, Indiana. At approximately 11:00 p. m. that same day the warrant was executed upon the residence at 212 East 38th Street by eight heavily armed police officers, five of whom approached the residence from the front, the remaining three covering the rear entrance. Members of the Indiana State Police, of the Marion Police Department, and of the Grant County Prosecutor's Office participated in what they later characterized as a "raid." Officer Spangler knocked on the door of the house, identified himself as a police officer, and upon hearing shuffling from the interior, pushed open the door. Approximately five seconds separated the knock and announcement from the entry. Layman was standing about ten feet from the door; his girlfriend, Laura Delaporte, was seated on a sofa some twelve feet from the door; their seventeen month old daughter was asleep in an adjacent bedroom. A search of the residence was conducted under the supervision of the Grant County Prosecutor. A quantity of marijuana was seized, together with forty-six articles of personal property, including two antique beds, power tools, camera equipment, stereo components, money, and weapons. At the time of the seizure police had reason to believe that antique furniture had been stolen in Grant County; the Prosecutor himself directed that all the property be seized. Appellant was charged with and convicted of two counts of theft of two of the handguns seized, as well as of the possession of marijuana.

## ISSUES

Appellant raises four issues for our consideration on appeal:

1. Whether the trial court erred in refusing to exclude the evidence seized in the search because the search warrant was not supported by an adequate showing of probable cause;

2. Whether the trial court erred in refusing to exclude the evidence seized in the search because the search warrant was improperly executed;

3. Whether the trial court erred in refusing to exclude the evidence seized in the search because the scope of the search exceeded the authority granted in the search warrant;

4. Whether the trial court erred in not directing the verdict for appellant because the evidence was insufficient to prove appellant's intent to commit theft.

Because of our decision in this case, we need discuss only the first issue. We reverse and remand for a new trial.

## DISCUSSION

Appellant contends that the trial court erred in not excluding the evidence seized by the state pursuant to the search warrant issued in this case, because the warrant was not supported by probable cause. We agree. We note initially that appellant properly preserved this issue for appeal first, by raising the issue in a pre-trial Motion to Suppress; second, by objecting to the introduction of the evidence again at trial; third, by raising and discussing the issue in his Motion to Correct Errors; and finally by stating and supporting his argument with cogent discussion and authority in his appellate brief. Appellant contends that the issuance of a search warrant without probable cause violates his constitutional rights under the fourth amendment to the Constitution of the United States and article I, § 11, of the Constitution of the State of Indiana. Both constitutions express the same prohibition of the issuance of general warrants by either federal or

state governments in almost identical language.[1]

Article I, § 11 of the Indiana Constitution reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."[2]

The basic purpose of the fourth amendment, upon which article I, § 11 of Indiana's Constitution is modeled, is to balance the public's interest in protecting society from criminal activity against the individual's fundamental right and expectation of privacy. *Payton v. New York*, (1980) —— U.S. ——, 100 S.Ct. 1371, 63 L.Ed.2d 639. It is the general rule that a search must be reasonable and that a search conducted without a warrant is presumed unreasonable unless certain exigent circumstances exist. Moreover, a search must be limited in scope to certain specifically enumerated items. Traditionally these items have been described as fruits of a crime, instrumentalities of a crime, contraband, and more recently mere evidence. *Warden, Md. Penitentiary v. Hayden*, (1967) 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. *See* IC 35–1–6–1 (Burns Code Ed., 1979 Repl.). The existence of a warrant, however, does not guarantee that the search made pursuant thereto is a reasonable one. *Agnello v. U.S.*, (1925) 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. Where the warrant is issued without probable cause, the warrant is defective and items seized as a result of the warrant must, on proper motion, be suppressed. *Ashley v. State*, (1968) 251 Ind. 359, 241 N.E.2d 264. Where a warrant is issued, furthermore, it must strictly comply with the constitutional and statutory law relating to search and seizure. *Rohlfing v. State*, (1949) 227 Ind. 619, 88 N.E.2d 148; *Kinnaird v. State*, (1968) 251 Ind. 506, 242 N.E.2d 500. IC 35–1–6–2(a) provides that a search warrant may be issued by a judge upon the filing of an affidavit

"particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished."

The affidavit[3] is to apprise the magistrate "of the underlying facts and circumstances tending to show that there is probable cause." *Kinnaird v. State, supra*, 242 N.E.2d at 506. The requirement that the determination of probable cause be a judi-

---

1. Even though *Mapp v. Ohio*, (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, held that the exclusionary rule of federal law applied to the states, the Indiana Supreme Court long before *Mapp* had imposed the exclusionary rule in Indiana cases under article I, § 11 of the Indiana Constitution. *See e.g., Callender v. State*, (1923) 193 Ind. 91, 138 N.E. 817; West's A.I.C. 35–1–6–1 at 70.

2. The fourth amendment of the United States Constitution reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

3. IC 35–1–6–2(c) provides:

"In lieu of an affidavit or in addition thereto, a search or arrest warrant may be issued upon sworn testimony of the same facts required for affidavits in a nonadversary hearing before a judge; the proceeding shall be recorded or transcribed by a court reporter or recording device."

No testimony relating to probable cause beyond the affidavit was offered in this case.

cial, and not a police, determination goes to the very heart of the fourth amendment. *Id.; Johnson v. U.S.,* (1948) 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Otherwise, the security of people's homes would be left to the discretion of police officers who are "engaged in the often competitive enterprise of ferreting out crime." *Johnson v. U.S.,* 333 U.S. at 14, 68 S.Ct. at 369.

■ The question in this case is reduced, therefore, to whether or not there was sufficient factual information on the face of the affidavit from which a neutral and detached magistrate could reasonably have concluded that probable cause existed for the issuance of a search warrant. Our approach is two-fold. First, we identify the questions a court must ask in determining whether a search is reasonable under the circumstances, *i.e.,* whether probable cause exists for a warrant to issue. Second, we apply the standard set out by the Indiana Supreme Court in determining whether enough facts are presented to enable a magistrate to answer these questions independently and apart from the conclusions of the affiant.

■ While the quantity and nature of the constituent elements necessary to establish probable cause are inextricably related to each given set of facts, there are two basic questions pertinent to the determination of probable cause for a search under any set of facts: (1) whether the particular items sought to be seized are sufficiently connected with criminal activity and (2) whether the items are to be found in a particular place. Berner, *Search and Seizure: Status and Methodology,* 8 Val.U.L. Rev. 471 (1974). If sufficient facts are presented so that a neutral and detached magistrate can make an affirmative response to these questions, probable cause may be presumed to exist thus making the issuance of the search warrant reasonable. Probable cause need not be established by that quantum of evidence necessary for a conviction nor need it be established by evidence which would be admissible at trial.

*Kinnaird, supra; Spinelli v. U.S.,* (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. For example, since the enactment of IC 35–1–6–2 probable cause in Indiana may be predicated on the basis of evidence not personally known to the affiant, so long as it is *credible* hearsay. *Madden v. State,* (1975) 263 Ind. 223, 328 N.E.2d 727. As pointed out by the Indiana Supreme Court in *Madden,* 328 N.E.2d at 729:

"Recognizing the dangers inherent in hearsay, however, the Legislature incorporated specific requirements into the statute to assure that the hearsay constituting the probable cause was *credible* in the mind of the issuing authority and not merely in the mind of the affiant. These requirements are specific and simple and were designed to assure that the determination of credibility can and will be that of the issuing authority, made independently of the judgment of the affiant. The goal is that warrants be issued only upon probable cause, *shown preferably by facts* but in any event by information that is believed to be reliable. The determination of probable cause cannot be made without first determining the likelihood of correctness of such information, and this determination must also be made by the issuing authority rather than merely by the affiant." (Emphasis added.)

The *Madden* court set out the proper standard to be used in analyzing the information supplied in an affidavit to determine whether the neutral magistrate could have made an independent determination of probable cause.

"To assure that those warrants issued upon 'information,' rather than upon hard facts, are issued only upon *reliable* information, supplied by a *credible* person, the statute requires the affiant to supply the issuing authority with the following information:

"(a) Affirmative allegations that the credible person spoke with personal knowledge of the matters contained therein.

"(b) The facts within the personal knowledge of the credible person.

"(c) The facts within the affiant's knowledge as to the credibility of the credible person.

"It will be observed that requirement (a) calls for the conclusion of the affiant, but that requirements (b) and (c) call for facts. It is from these facts that the issuing authority will draw his independent conclusions as to (1) the credibility of the person who supplied the information to the affiant and (2) whether or not such person supplied such information from facts within his personal knowledge. The function of the affiant in this situation is primarily one of relaying factual information from the person who has personal knowledge of it to the person who is to make the 'probable cause' determination. The judgments are to be those of the issuing authority and not merely those of the seeker of the warrant. To require less would be to eliminate the judgment of the issuing authority, which would destroy the constitutionality of the procedure. '* * * probable cause must be determined by a "neutral and detached magistrate," and not by "the officer engaged in the often competitive enterprise of ferreting out crime." ' *Spinelli v. United States* (1969), 393 U.S. 410, 415–416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 643."

*Id.* The court here is echoing the long line of Indiana and federal cases which prohibits the establishment of probable cause by conclusory affidavits.

A copy of the search warrant incorporating the affidavit in question is set out in full below:

## "SEARCH WARRANT

To any constable, police officer, sheriff or conservator of the peace, GREETINGS: Whereas, there has been filed with me an affidavit of which the folowing [sic] is a copy:

STATE OF INDIANA
COUNTY OF GRANT, SS:

AFFIDAVIT FOR SEARCH WARRANT

Billy Kreider swears that he believes and has good reason to believe that there are controlled substances as defined by the laws of Indiana located at:

1) Two story white frame house located on the northwest corner of 38th Street and South Wigger Street in Marion, Grant County, Indiana.

2) A one story white frame house, with green trim and green roof, being the first house west of and adjacent to the premises described in (1) above.

Affiant believes that there are controlled substances at the above location because an unidentified informant, who has given him reliable information in the past resulting in convictions, has given him the following facts:

On January 25, 1979 the informant observed controlled substances, identified by the occupant of the above premises as having a street name as a controlled substance as defined by law, being sold by the occupants of both the foregoing premises.

Further that on prior dates the said occupants of both said premises were observed by said informant selling controlled substances.

/s/ D/Sgt. Billy L. Kreider 3081
BILLY KREIDER    I.S.P.

Subscribed and sworn to before me this 26th day of January, 1979.

/s/ Robert A. Foust
ROBERT A. FOUST
DEPUTY PROSECUTING
ATTORNEY
48th Judicial Circuit
State of Indiana

You are, therefore, commanded, in the name of the State of Indiana, with the necessary and proper assistance, in the daytime or in the nighttime to enter into or upon the premises described in said affidavit and there diligently search for said goods and chattels, to-wit: in said affidavit described and that you bring the same, or any part thereof found on such search, forthwith before me at my office to be disposed of according to law.

Given under my hand this 26th day of January, 1979.

/s/ Thomas J. Wright
JUDGE"

 Our analysis of the affidavit according to the requirements of *Madden* reveals that it did not enable the issuing authority to make a determination upon his own judgment independently of the opinion of the affiant (1) that the items to be seized were in fact "controlled substances" and therefore connected with criminal activity or (2) that the items could reasonably be expected to be found in the places named. There is no allegation as to *where* the informant observed the occupants of these premises selling the so-called controlled substances. There are no facts alleged as to which of the 180 items defined by Indiana law as controlled substances the informant observed the occupants of the premises selling. Courts have been liberal in drug cases regarding the specificity with which items to be seized must be named in the warrant since the purpose for search warrants in cases involving contraband is not necessarily to seize specified property, but to seize property of a specified character. Berner, *supra.* Therefore, "[w]arrants reciting 'a quantity of heroin,' 'controlled drugs,' and 'gaming implements and apparatus' have been upheld. *Id.*, at 513. In the case of the supporting affidavit, however, according to *Madden*, while the affiant may allege conclusions regarding the credibility and reliability of his informant, he must also present the magistrate with those *facts* supplied him by his informant upon which the informant based his conclusions. Such was not done in this case. Sufficient facts not having been alleged upon which a neutral and detached magistrate could have made an independent determination of probable cause that the items to be seized were in fact controlled substances and that controlled substances were in fact present at either of the named locations, the affidavit is insufficient and the warrant improperly issued. All evidence seized pursuant to said warrant therefore, must be suppressed and defendant's convictions overturned.

Reversed and remanded for a new trial.

ROBERTSON, P. J., and NEAL, J., concur.