Kevin P. FLAHERTY, et al., Appellants
(Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–182A12.

Court of Appeals of Indiana,
Fourth District.

Dec. 27, 1982.

Rehearing Denied Feb. 10, 1983.

J. Frank Hanley, II, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Drugs seized during a search of the apartment of defendants-appellants Kevin P. and Kathy A. Flaherty (husband and wife) served as the basis for their convictions for violations of the Indiana Controlled Substances Act, Ind.Code 35–48–4–7 (possession of LSD) and Ind.Code 35–48–4–11 (possession of marijuana). They claim on appeal, and correctly so, that the information in the search warrant (revealing a "controlled buy" situation) did not establish probable cause, the deficiency being the failure of the police officer to state therein that he observed the informant enter and leave the Flahertys' apartment. The conviction is therefore reversed.

## FACTS

In this case, police obtained a search warrant for defendant's apartment on the basis of the following affidavit:

STATE OF INDIANA, COUNTY OF MARION, SS:

James W. Wurz (Police Officer) swears or affirms that he believes and has good cause to believe that Marijuana, Cannabis Sativa, the possession of which is unlawful, is being kept, and sold from the residence of 7820 Brookfield Court, apartment # 72, Indianapolis, Marion County, Indiana, said residence is under the control of Kevin P. Flarety [sic] W/M and Kathy A. Flarety [sic] W/F this affiant basis [sic] his belief on the following information, that a *confidential informant,*

was searched and given U.S. Currency by thiss [sic] affiant, and observed enter [sic] 7820 Brookfield Court, Indianapolis, Marion County, Indiana, said informant stayed approximately (5) minutes and returned directly to this affiant, again said informant was searched by this affiant, and the U.S. Currency this affiant gave the said informant was not on the informants [sic] person, said informant gave this affiant the suspected Marijuana, Cannabis Sativa, said above purchase occured [sic] within the last (4) days of 5–6–80, a field test by this affiant showed positive for Marijuana, Cannabis Sativa, based on the above information. I am requesting to search 7820 Brookfield Court, apartment # 72, Indianapolis, Marion County, Indiana, said apartment is located in the Crossings Apartment Complex, said apartment consists of a livingroom [sic], dining area, kitchen, bathroom, and bedrooms, and I am requesting to search all rooms, closets, cabinets, drawers, personal containers, and effects located therein or thereon where Marijuana, Cannabis Sativa, maybe [sic] concealed."

From an examination of the contents of the foregoing affidavit, it is clear the officer-affiant was not attempting to rely on hearsay information from his confidential informant. The affidavit was devoid of such information and additionally made no attempt to establish the informant's reliability. Thus, the state relied solely on the personal observations of Officer Wurz. However, the information in the affidavit revealed that Officer Wurz observed the informant enter and exit the apartment building only, but not the individual apartment of the Flahertys. The absence of the latter information was fatal to the efficacy of the affidavit.

Under the facts of this case, we are again confronted with the issue of the sufficiency of the affidavit where there has been a controlled buy. Judge Young, writing for this court in *Mills v. State*, (1978) 177 Ind. App. 432, 379 N.E.2d 1023 observed that Ind.Code 35–1–6–2 requires an affidavit which is based upon hearsay to "contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished." He further noted that our Supreme Court made compliance with IC 35–1–6–2 mandatory in *Madden v. State*, (1975) 263 Ind. 223, 328 N.E.2d 727.

■ However, Judge Young went on to indicate the requirements of the statute were not applicable where the facts supporting the affidavit involved a controlled buy rather than hearsay testimony from an informant. He explained the mechanics of the arrangement as follows:

"A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. *Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.*" (emphasis added)

*Mills v. State, supra* 379 N.E.2d at 1026. He then upheld the validity of the search warrant, instructing that "*where controls are adequate,* the affiant's personal observation of a 'controlled buy' may suffice as grounds for a finding of probable cause." *Id.* Thus, as Judge Young indicated, even where the informant is not reliable, a court can accept the personal observations of the attesting officer as establishing probable cause.

The *Mills* decision was cited with approval by our supreme court in *Haynes v. State*, (1982) Ind., 431 N.E.2d 83, a case where the propriety of a controlled buy situation was again in issue. In *Haynes*, the sufficiency of the evidence was challenged because the officers were only able to see the informant approach the single family dwelling but, because of evening darkness, did not see

him actually enter it. However, the officers did observe him leaving the residence. The supreme court found the controls over the buy to be sufficient under the *Haynes* facts. However, Justice Pivarnik cautioned: "This is not to say in all instances such behavior will uphold a controlled buy. We are merely saying that under the facts presented before us, the controls were adequate and the evidence was sufficient to convict defendant Haynes of selling marijuana." *Id.* at 86.[1]

In the case at bar, the affidavit relates the officer observed the informant enter the *apartment building* address. An apartment building is, by definition, "*a building containing a number of separate residential units* and usually having conveniences (as heat and elevators) in common." Webster's Third New International Dictionary, p. 98 (1976) (emphasis added). But the affiant failed to set forth any facts establishing that the informant entered the Flahertys' apartment, # 72.

■ The law is well-settled that an affidavit for a search warrant must apprise the magistrate of the underlying facts and circumstances which tend to show probable cause exists for the search. *Layman v. State,* (1980) Ind.App., 407 N.E.2d at 259. The *Layman* court analyzed the approach of a reviewing court faced with the sufficiency of the factual basis presented for the issuance of a search warrant as follows:

"Our approach is two-fold. First, we identify the questions a court must ask in determining whether a search is reasonable under the circumstances, *i.e.,* whether probable cause exists for a warrant to issue. Second, we apply the standard set out by the Indiana Supreme Court in

determining whether enough facts are presented to enable a magistrate to answer these questions independently and apart from the conclusions of the affiant.

While the quantity and nature of the constituent elements necessary to establish probable cause are inextricably related to each given set of facts, there are two basic questions pertinent to the determination of probable cause for a search under any set of facts: (1) whether the particular items sought to be seized are sufficiently connected with criminal activity and (2) *whether the items are to be found in a particular place.* If sufficient facts are presented so that a neutral and detached magistrate can make an affirmative response to these questions, probable cause may be presumed to exist thus making the issuance of the search warrant reasonable." (citations omitted). 407 N.E.2d at 263, (emphasis added).

■ An examination of the affidavit in this case clearly shows a complete lack of factual presentation regarding the second basic question set forth by the *Layman* court. Only by speculation could the neutral magistrate in this case have singled out the Flahertys' apartment as the one where the informant obtained the marijuana.

■ Testimony at the suppression hearing held prior to trial disclosed that Officer Wurz, by means of a front glass panel on the apartment building, observed the informant approach the Flahertys' apartment, saw the door to the unit open and shut, and later saw the informant exit the apartment. The record does not disclose why this information was not included in the affidavit.[2] However, "when the affidavit is so at-

1. The question of the sufficiency of police controls over a buy was treated in *Whirley v. State,* (1980) Ind.App., 408 N.E.2d 629. That case approved of the *Mills* decision and held that control over a buy was adequate where the police lost sight of the informant for a mere 20 seconds when he walked from the front of the house to the back door. Also, in *Watt v. State,* (1980) Ind.App., 412 N.E.2d 90, the affidavit supporting the search warrant which revealed a controlled buy, was approved.

2. In *United States v. LaFond,* (E.D.Wisc.1980), 482 F.Supp. 1379, a federal court upheld a search warrant of a single apartment unit where the officers observed the informant enter a duplex which contained two apartments. However, in that case, the government agents presented testimony to the magistrate issuing the warrant which disclosed that a phone check and other independent observations of one of the occupants at the address had given them probable cause to believe narcotics were present in a particular unit.

tacked, [as not showing probable cause on its face] the State may not introduce other evidence to support its contention that probable cause existed at the time of the decision on the search warrant." *Watt v. State, supra,* at 95. *See also Madden v. State, supra, Watts v. State,* (1982) Ind. App., 434 N.E.2d 891; *Knaub v. State,* (1979) Ind.App., 394 N.E.2d 201, 204. The issue, therefore, is whether the affidavit itself, without additional information or testimony presented after the search warrant is executed, alleges sufficient facts upon which the issuing authority could have made an independent determination of probable cause. Here, the affidavit left to the speculation of the magistrate whether or not the informant actually entered Apartment # 72. If we were to uphold the search warrant in this case, we would be sanctioning the search of any apartment unit merely upon an officer's observation of an unreliable informant entering an apartment lobby. We decline to do so and hold the affidavit insufficient.[3] The warrant being improperly issued, all evidence seized in the search made thereunder must be suppressed and the Flahertys' convictions reversed. *Layman v. State, supra.* The case is therefore reversed and remanded for a new trial.

YOUNG, P.J., concurs.

CONOVER, J., concurs in result.

**3.** Also supporting our finding are analogous cases which hold that a search warrant must specify which sub-unit in a multi-occupant building is to be searched. Thus, in *Watts v. State, supra,* Judge Robertson, speaking for the court, instructed:

"However, in situations involving buildings, particularly dwellings with multiple occupants, search warrants have generally been held to be invalid when they failed to specify which sub-unit was to be searched. Generally, Annot. 11 A.L.R.3d 1330, 1333 (1967) *e.g. Tynan v. United States,* (9th Cir. 1924), 297 F. 177, *cert. denied,* 266 U.S. 604, 45 S.Ct. 91, 69 L.Ed. 463. The leading Indiana case on this issue is *Thompson v. State,* (1926) 198 Ind. 496, 154 N.E.2d 278. In *Thompson,* the warrant described the residence which contained ten rooms, two of

which the defendant occupied. Our supreme court held the search was invalid stating:
  'Where a building or the premises are described in the search warrant or affidavit by a single street number, and more than one family resides at such street number in the building, in a separate apartment; or where more than one separate business is carried on within the premises designated by such street and number by a separate proprietor— plainly upon principle a warrant directed to search the premises designated by such single number would be illegal and void unless there was something in the affidavit to connect each one of the occupants of the premises with the alleged unlawful act.'
  154 N.E. at 279."
*Id.* at 893.